**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NAGI YOUSSEF | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANVIL INTERNATIONAL, et al. | : | NO. 06-4926 |

**<u>MEMORANDUM RE SUMMARY JUDGMENT MOTION</u>**

Baylson, J.                                                    **January 22, 2009**

A novel state law issue requires resolution in this employment discrimination case.  Does Lancaster County have the power to create a private cause of action for violation of the Lancaster County Human Relations Act ("LCHRA") brought by a terminated employee of a private company?  Concluding that Lancaster County does not have this power under Pennsylvania state law, the Court will grant Defendants' Motion for Summary Judgment as to this claim, but find that Plaintiff has sufficient evidence to proceed to trial on other claims.

In an action brought pursuant to Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1866, the LCHRA, the Pennsylvania Human Relations Act (PHRA), and common-law defamation, Plaintiff Nagi Youssef has alleged discrimination based on a failure to promote, retaliation, and harassment by his employer, Defendant Anvil International, and employees Larry Layman, Michael Millhouse, and Donald Moore.  Defendants have moved for summary judgment on all claims.  For the following reasons, the Motion will be GRANTED in part and DENIED in part.

I.      **Factual Background**

A.      **Plaintiff's Employment History**

Plaintiff is Egyptian.  (Defs.' Statement Undisputed Fact ¶ 1.)  Plaintiff was hired by Defendant Anvil as a millwright in February 1994.  (Id. at ¶ 2.)  As a millwright, he troubleshoots and repairs machines in the company machine shop.  Plaintiff has received positive evaluations during his employment at Anvil.  (Defs.' Mot. Summ. J. Exs. 8, 9; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. D.)  Plaintiff was promoted to Master Millwright in 2001.

Plaintiff sought advancement to be a supervisor starting in 2002.  Plaintiff specifically identified two supervisor positions for which he applied and was interviewed.  (Defs.' Mot. Summ. J. Ex. 3, Pl.'s Resp. to Defs.' Interrog. # 15).  The first is a maintenance supervisor position filled by outside hire Steve Hatfield on January 13, 2003.[1]  The second is a production supervisor position filled internally by Pam Lightner (whom the Court also believes is incorrectly referred to in the record as Pam Widener/Widner) on October 18, 2004.[2]  Plaintiff identified an additional production supervisor position to which he applied that was filled in 2003 or 2004, but he could not name who filled the position.  (Defs.' Statement Fact ¶ 5.)  Finally, Plaintiff contends that in 2005 he responded to a newspaper ad for a maintenance planner position formerly held by Matthew Kossick.  (Id. at ¶ 6.)  Anvil decided not to fill this position due to

---

[1]Hatfield has a Bachelor of Science from the University of Georgia, had taken specialized training courses, and had twenty-four years of manufacturing, engineering, and maintenance experience, including supervisory roles.  Hatfield is Caucasian.  (Defs.' Mot. Summ. J. Ex. 5.)

[2]Lightner had worked for Anvil since 1987 and was a production technician prior to promotion to production supervisor.  Lightner had taken multiple business and management courses, received positive evaluations, and often filled in as supervisor when needed.  (Defs.' Mot. Summ. J. Ex. 6.)  Lightner did not have a college degree.  (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. DD.)  Lightner was Caucasian.

department restructuring (Id. at ¶ 21.)[3]

Despite admitting to applying to these positions in his interrogatory responses, Plaintiff argues in his Response brief that he did not formally "apply" for supervisor positions because Anvil did not have a formal in-house application process and employees learned of openings by "word of mouth." (Pl.'s Counter-Statement Undisputed Fact ¶ 4.) Defendant did not hire any production supervisors in the year prior to Plaintiff's termination (Defs.' Mot. Summ. J. Ex. 7 at ¶ 3, Suor Aff.)

Plaintiff met with general manager Paul Suor in Summer 2004 to discuss his desire to become a supervisor. Suor instructed Plaintiff to contact Department Supervisor Mike Millhouse and Human Resources Director Don Moore to develop a plan to work on his supervisory skills. (Defs.' Statement Fact ¶ 17.) Moore suggested that Pl. take supervisory courses at Harrisburg Area Community College through their tuition reimbursement program. (Defs.' Mot. Summ. J. Ex. 1 at 157, Youssef Dep.) Plaintiff completed one course on November 30, 2004. (Id. Ex. 11.) Moore also told Plaintiff that he would be invited to local supervisory training on-site "as time goes on." Plaintiff was never invited to training. (Pl.'s Counter-Statement Fact ¶ 18.)

Sometime in August 2005, Moore and Millhouse held a meeting with Plaintiff to tell him that he was not going to be considered for future supervisor opportunities. (Pl.'s Resp. Defs.' Mot. Ex. AA at 113, Moore Dep.) An unsigned note dated August 9, 2005, presumably in regards to the meeting, states "Nagi performance – not impressing anyone – supv. not getting

---

[3]In his initial charge to to the Lancaster County Human Relations Commission (LCHRC), Plaintiff mentioned additional supervisor positions for which he was not selected (Pl.'s Resp. Defs.' Mot. Ex. E), but these pre-date the positions mentioned above, are insufficiently developed in the record, and certainly are time-barred, so the Court will not consider them.

feedback he needs to recommend promotion e.g. S/D sheets. [A]t this point Nagi states 'done talking' & walked out." (Pl.'s Resp. Defs.' Mot. Ex. T.) Also in August or September 2005, Moore and Millhouse held a meeting with Plaintiff to discuss some performance and record-keeping issues. Plaintiff responded "that's bullshit, I don't want to hear nothing" and left the meeting. (Def.'s Mot. Summ. J. Ex. 1 at 192-94, Youssef Dep.)

On September 12, 2005, Plaintiff filed a charge of discrimination with the Lancaster County Human Relations Commission (LCHRC) alleging national origin discrimination for his failure to be promoted. (Defs.' Mot. Summ. J. Ex. 12.) The charge was dual-filed with the Pennsylvania Human Relations Commission (PHRC) and Equal Employment Opportunity Commission (EEOC).

### B.   Plaintiff's Termination

On November 8, 2005, Plaintiff's immediate supervisor, Larry Layman, assigned him to repair several machines, including Machine No. 72. (Defs.' Statement Fact ¶ 25.) A work order had been filed for the Machine the night before. (Defs.' Mot. Summ. J. Ex. 13.) According to Plaintiff, the Machine had been down for a long time and others had tried to fix it without leaving notes or instructions. (Id. Ex. 1 at 218, Youssef Dep.) However, Machine No. 72 was not "locked out" or "tagged out" to indicate that another employee had started repairs on the machine. (Defs.' Statement Fact ¶ 28.)

Plaintiff spent about fifteen minutes trying to troubleshoot the machine but could not fix it. (Id. ¶ 30.) Plaintiff contends that he was not capable of fixing the machine and it required work done by a machinist (someone who makes machine parts), not a millwright (who repairs machines). (Pl.'s Counter-Statement Fact ¶ 26.) The machine eventually took fifty-five hours to

-4-

fix and was not repaired until November 14.  (Pl.'s Resp. Defs.' Mot. Ex. O.)

After unsuccessfully attempting to fix the machine, Plaintiff proceeded to work on another machine.  Shortly thereafter, Layman came by and asked Plaintiff why he was not working on Machine No. 72. (Defs.' Statement Fact ¶ 34.)   There is a dispute of fact as to what Plaintiff replied to Layman.  In Layman's testimony to the Unemployment Compensation Board of Review, he stated that Nagi told him "he would not fix the machine."  (Pl.'s Resp. Defs.' Mot. Ex. V at 55.)  However, in Layman's deposition he agreed with counsel's statement that Nagi told him "he couldn't fix the machine."  Layman told Plaintiff to continue working on the machine, but Plaintiff repeated he did not know what the problem was and Layman needed to show him the problem.  (Defs.' Mot. Summ. J. Ex. 1 p. 219, Youssef Dep.)

After this encounter, Layman came walking through the shop and said "I'm going to fucking fire Nagi."  (Pl.'s Resp. Defs.' Mot. Ex. Q at 4., Tshudy LCHRC Test.; Id. Ex. BB at 167:18-19, Layman Dep.)  Layman then instructed Union President Maris Tshudy to bring Plaintiff to his office for a meeting.  During the meeting, Layman asked Plaintiff to return to Machine No. 72 but Plaintiff refused, claiming that co-workers were not doing their share of the work.  (Def.'s Mot. Summ. J. Ex. 15 ¶¶ 21, 25, Tshudy Aff.)  At one point, Plaintiff left the meeting and returned shortly after with a large machine spindle, weighing 40 to 50 lbs., which he slammed on Layman's office floor and yelled, "Know your fucking job, Layman."  (Id. ¶ 26.)  Layman told Plaintiff he was suspended and to go home.  (Defs.' Statement Fact ¶ 40.)

On November 9, 2008, Plaintiff discussed the events of November 8 with Moore by telephone.  (Id. ¶ 41.)  Moore recommended termination to General Manager Kim based on Plaintiff's insubordination on November 8 and during the prior meeting in August or September

2005.  (Defs.' Mot. Summ. J. Ex. 17 at 57, Moore Dep.)  "Insubordination, refusal to do assigned

work, refusal to obey orders ..." are grounds for disciplinary action under the Anvil "Shop Rules

and Regulations" (Id. Ex. 18.)  Kim approved Moore's recommendation for termination.  (Id. Ex.

17 at 41, Moore Dep.)  Plaintiff was terminated on November 10, 2005.  Plaintiff alleges that

after his termination, Layman defamed him to the maintenance staff by telling them that Plaintiff

had refused to do the job assigned to him and had walked away from the job.  (Id. Ex. 1 at 239,

Youssef Dep.)

## C.    Events Following Plaintiff's Termination

Following his termination, on November 15, 2005, Plaintiff filed a second charge with

the LCHRC alleging retaliation.  (Id. Ex. 19.)  On December 12, 2005, Plaintiff filed an

Amended Complaint with the LCHRC adding a hostile work environment allegation, which he

had not raised previously.  The Complaint alleged that Layman had made comments and "camel

jokes" that ridiculed his nationality and were "offensive, intimidating, condescending, and rude."

(Id. Ex. 20.)  In his deposition, Layman admitted to laughing at, but not actively participating in

or making, jokes about Mr. Youssef's Egyptian heritage.  He admitted that there was some "just

kidding around and stuff."  (Pl.'s Resp. Defs.' Mot. Ex. BB at 193-94, Layman Dep.)  Layman

did not stop such jokes.  (Id.)  However, co-employee Gary Emenheiser stated that:

"Racially/Ethnic charged jokes were common in the work place at Anvil and enjoyed by Larry

Layman who added jokes of his own."[4]  (Id. Ex. P, Emenheiser Aff.)  In his deposition, Plaintiff

stated that Layman had not made such comments for "like maybe one year or – before

_____

[4]Defendant disputes Emenheiser's personal knowledge of such jokes since he was
transferred to a different shift than Plaintiff in January 2003 and was no longer supervised by
Layman.  (See Defs.' Reply Pl.'s Opp'n Defs.' Mot. Ex. 24.)

separated." (Defs.' Mot. Summ. J. Ex. 1 at 180.)

Plaintiff received right-to-sue letters from the LCHRC on November 8, 2006 (complaint of discrimination) and December 12, 2006 (complaint of retaliation). (Pl.'s Resp. Defs.' Mot Ex. U). Plaintiff received a right-to-sue letter from the EEOC issued on August 23, 2007.

There are disputed issues of fact over the LCHRC investigation prior to the issuance of the right-to-sue letter. First, Tshudy testified to the LCHRC that "Nagi is a degreed Engineer and was treated totally different than any of the individuals I just named to you outside of that realm. And I believe, I believe it is because of the color of his skin." (Id. Ex. Q at 3, Tshudy LCHRC Test.) However, in a subsequent affidavit, Mr. Tshudy stated "I never observed Mr. Youssef being exposed to any form of harassment based on his national origin." (Defs.' Mot. Summ. J. Ex. 15 ¶ 11, Tshudy Aff.) Second, during discovery, Plaintiff discovered a draft of a letter from the LCHRC Executive Director to Anvil's attorney, Mr. Senft, dated July 28, 2006, which recommended a finding of a probable cause of discrimination and a probable cause of retaliation. (Pl.'s Resp. Defs.' Mot. Ex. FF.) However, the letter was never signed nor sent to the parties, but was found in the internal files of the LCHRC. (See Defs.' Reply Pl.'s Opp'n Defs.' Mot. Exs. 24, 25, Suor, Senft Deps.)

Finally, there is a dispute of fact about the exact date that Anvil received notice of Plaintiff's initial charge of discrimination filed with the LCHRC. Plaintiff alleges that Defendants received notice of the LCHRC charge on the date of Plaintiff's suspension, November 8, 2005. (Am. Compl. ¶ 26; Pl.'s Resp. Defs.' Mot. 24.) Defendants claim that they received this notice prior to the date of suspension, "some time after its mailing date of October 27, 2005" (Defs.' Answer Am. Compl. ¶¶ 26, 27.) The record does not reveal the exact date that

Anvil received notice of the charge.

## II.   Procedural History

Plaintiff filed a Complaint with this Court on November 7, 2006 (Doc. No. 1).  Plaintiff

filed an Amended Complaint on February 20, 2007 (Doc. No. 2).  Defendants filed a partial

Motion to Dismiss on April 13, 2007 (Doc. No. 10), which the Court granted in part on

November 28, 2007, dismissing Plaintiff's Title VII, wrongful discharge, and negligent

supervision claims (Doc. No. 20).  Plaintiff filed a Motion for Reconsideration to reinstate Count

II (Title VII claim), which the Court granted on March 3, 2008 (Doc. No. 29).  On April 10,

2008, Plaintiff voluntarily dismissed Defendants Mueller and Walter, which are parent

companies of Defendant Anvil (Doc. No. 32).

Following discovery, Defendants filed this Motion for Summary Judgment on October 6,

2008 (Doc. No. 54).  On December 22, 2008, the Court held oral argument on the Motion.  At

oral argument, Plaintiff agreed to drop the defamation claim against Defendants Moore and

Millhouse.  In an Order (Doc. No. 73) following oral argument, the Court denied Plaintiff's

Motion to Strike Defendant's Reply Brief (Doc. No. 66) and denied Defendant's Motion to

Exclude Testimony of Gary Emenheiser (Doc. No. 69).  At oral argument, the Court advised the

parties that the Defendants' Motion for Summary Judgment would not be granted in full and that

a trial would be scheduled.  The following discussion articulates Plaintiff's claims that are

dismissed and those which survive summary judgment.

## III.   Parties' Contentions

Plaintiff's remaining counts against the remaining Defendants are as follows: (I) Section

1981 against Defendant Anvil, (II) Title VII against Defendant Anvil, (III) PHRA against all

Defendants, (IV) LCHRA against all Defendants, and (VI) defamation against Defendants Anvil and Layman.

In their Motion for Summary Judgment, Defendants contend that each of the Plaintiff's claims should be dismissed as a matter of law.  Defendants argue that Plaintiff's LCHRA claim fails because there is no private right of action under the Act.  In addition, Defendants claim that Plaintiff's Section 1981 claim is insufficient because Plaintiff has alleged national origin discrimination and Section 1981 solely protects race discrimination.  Further, Defendants argue that Plaintiff's failure to promote claim under Title VII, Section 1981, PHRA, and LCHRA must fail for four reasons.  First, all of the alleged promotions occurred prior to November 2004 and therefore are time-barred by the relevant statutes.  Second, Defendants assert that Plaintiff has failed to exhaust his administrative remedy as to some of his promotion claims because Plaintiff did not identify all of the positions he now raises in his original LCHRC charge.  Third, Defendants argue that two of the identified promotion positions must be dismissed due to evidentiary preclusion because Plaintiff failed to mention them in his answers to Defendants' interrogatories.  Fourth, Defendants assert that Plaintiff has not shown Defendants' legitimate reason for not promoting him was pretextual.

As to Plaintiff's retaliation claim, Defendants argue that Plaintiff has failed to state a prima facie case because he has not shown a casual link between the protected activity and Plaintiff's termination; further, Plaintiff has not shown pretext.   As to Plaintiff's hostile work environment claim, Defendants contend that this claim is time-barred, the alleged jokes were not severe and pervasive to meet the legal standard for a hostile work environment, and Plaintiff's claim is barred by his failure to report the jokes to his employer.  Finally, Defendant asserts that

Plaintiff's defamation claim is based entirely on hearsay and Layman's alleged statements are not sufficiently injurious and/or are based on opinion to form the basis of a hearsay claim.

Plaintiff replies that there is a private right of action under the LCHRA and that counties have the same powers of enforcement as the Pennsylvania Human Relations Commission. Plaintiff asserts that its Section 1981 claim is valid because it is based on ethnicity, which falls within the statute's protection. As to his failure to promote claim, Plaintiff argues that his claims support a continuing violation theory and are therefore not time-barred; that he has not failed to exhaust administrative remedies because he was discriminated against generally and not with regards to a specific position; and that there is sufficient evidence of pretext. As to his retaliation claim, Plaintiff argues that the temporal proximity between Defendants learning of Plaintiff's LCHRC charge and Plaintiff's firing establishes the necessary casual link to support a prima facie claim and that Plaintiff has shown a disputed issue of fact regarding pretext. As to his hostile work environment claim, Plaintiff argues that the conduct was severe and pervasive and Layman, as supervisor, failed to stop the jokes. Finally, as to his defamation claim, Plaintiff asserts that Layman published a deliberate falsehood about Plaintiff and that Defendants can not claim absolute or conditional privilege regarding the statement.

## III.   <u>Legal Standard</u>

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A factual dispute is

"material" if it might affect the outcome of the case under governing law.  Id. _____

          A party seeking summary judgment always bears the initial responsibility for informing

the district court of the basis for its motion and identifying those portions of the record that it

believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular

issue at trial, the moving party's initial burden can be met simply by "pointing out to the district

court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.

After the moving party has met its initial burden, the adverse party's response must, "by

affidavits or as otherwise provided in this rule [ ] set out specific facts showing a genuine issue

for trial."  Fed. R. Civ. P. 56(e).  Summary judgment is appropriate if the non-moving party fails

to rebut by making a factual showing "sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477

U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the

light most favorable to the opposing party.  Anderson, 477 U.S. at 255.

## IV.    Discussion

### A.    Lancaster County Human Relations Act Claim

          Plaintiff asserts a claim under the LCHRA.  Effective October 23, 2002, Lancaster

County amended the Act by adding Section 21, which is entitled "Right of Action in Court" and

reads in part as follows:

> (a)  In cases involving acts declared unlawful by this Ordinance, if
> a complainant invokes the procedures set forth in this Ordinance,
> that individual's right of action in the Court of Common Pleas of
> Lancaster County shall not be foreclosed. . . .  the complainant
> shall be able to bring an action in the Court of Common Pleas of

> Lancaster County based on the right to freedom from
> discrimination granted by this Ordinance . . . .

Lancaster Ord. No. 64 § 21(a).  The Ordinance goes on to allow a court to enter an injunction,

and also allows reinstatement, granting of backpay, or "any other legal or equitable relief as the

court deems appropriate," and adds: "the court may impose punitive damages on a respondent

whom the court finds has engaged in or is engaged in any unlawful practice with malice or

reckless indifference to the rights of the complainant set forth in this Ordinance."  The Ordinance

also allows the court to award attorney's fees and costs to the prevailing plaintiff."

This Court has not found any state or federal cases that upheld or rejected a claim under

this amended version of the LCHRA, or under any similar local Pennsylvania county ordinance.

In Kuhn v. Oehme Carrier Corp., 63 Pa. D.&C.4th 490, 498 (Pa. Ct. Com. Pl. 2003), Judge

Ashworth of the Lancaster County Court of Common Pleas held that the Lancaster Ordinance did

not provide a private cause of action, but it analyzed the prior version of the Ordinance (Ord. No.

30), which did not contain the explicit right to sue as set forth in Section 21.  The Kuhn plaintiff

also filed a companion case in federal court based on the same facts, but the federal case did not

contain a LCHRA claim, only a Title VII and PHRA claim.  Kuhn v. Oehme Carrier Corp., 255

F.Supp.2d 458 (E.D. Pa. 2003). In dictum rejecting defendant's argument that the plaintiff had

failed to exhaust her administrative remedies by filing with the LCHRC but failing to dual-file

with the PHRC, Judge Van Antwerpen (then a District Court Judge) noted that "[T]he LCHRC

was empowered with the same power to enforce the PHRA's anti-discrimination provisions as

the PHRC."  Id. at 466 (citing 43 P.S. § 962.1(d) ("The legislative bodies of political

subdivisions shall have the authority to grant to local commissions powers and duties similar to

those now exercised by the Pennsylvania Human Relations Commission under the provisions of this act.")).

Plaintiff contended at oral argument that this dictum in the federal <u>Kuhn</u> case supports his position that there is a private right of action under the LCHRA.  This Court disagrees.  The language merely indicates that the Lancaster Commission has the same authority to investigate and pursue complaints as the Pennsylvania Commission.  This language does not specifically rule on whether Lancaster County was authorized to allow a private right of action.

To determine whether Lancaster County had the authority to add a private right of action to the LCRA, two lines of inquiry are appropriate.  The first explores the general powers of a county under Pennsylvania law, and the second explores Pennsylvania cases on the creation of a private right of action.

### 1.      Powers of a County Government

As the famous saying goes, "all politics are local," but power may be remote.  A county is a political subdivision of the Commonwealth, and it "may legislate, but not, however, beyond the bounds of the powers granted to it by the General Assembly in The County Code."  <u>Franklin County Prison Bd. v. Commonwealth</u>, 406 A.2d 829, 831 (Pa. Commw. Ct. 1979) (citing <u>Chester County v. Philadelphia Elec. Co.</u>, 218 A.2d 331 (Pa. 1966)).  The County Code does not grant an explicit power to create a private right of action.  <u>See</u> 16 P.S. § 202 (enumerating the general powers of counties).  Because a county "possesses no power nor bears any responsibility in the absence of a specific mandate," <u>In re Incorporation of Borough of Valley-Hi</u>, 381 A.2d 204, 207 (Pa. Commw. 1977), this implies that a Pennsylvania county does not possess the authority to create a private right of action.

-13-

Pennsylvania home rule localities may legislate concerning municipal governance without express statutory authority for a particular ordinance.  City of Philadelphia v. Schweiker, 858 A.2d 75, 84 (Pa. 2004).  Philadelphia is such a first-class, home rule city under its enabling law, the First Class City Home Rule Act of 1949.  P.L. 665 (codified as amended 53 P.S. §§ 13101-13157).  Philadelphia enacted a local anti-discrimination ordinance, the Philadelphia Fair Practices Ordinance (PFPO), also containing an explicit private right to sue.  Philadelphia Code § 9-1110.

In Richards v. Foulke Assoc., Inc., 151 F. Supp. 2d 610 (E.D. Pa. 2001), Judge O'Neill of this Court noted the availability of a private right of action under the PFPO, but dismissed plaintiff's claim for failure to exhaust administrative remedies.  A similar holding was reached in Marriott Corp. v. Alexander, 799 A.2d 2005 (Pa. Commw. 2002).  These cases assume the ability to bring a private claim under the PFPO, without analyzing or expressly upholding Philadelphia's authority to create such a private right of action.

However, the fact that a private right of action may exist under the PFPO does not determine the validity of Plaintiff's LCHRA claim.  Unlike Philadelphia, Lancaster is a non-home rule, third-class county.  As stated above, non-home rule counties differ from home rule counties in that they may "not legislate independently of a Commonwealth's declared policy."  Chester County, 218 A.2d at 332; see also Bldg. Owners & Managers Ass'n of Pittsburgh v. City of Pittsburgh, 929 A.2d 267, 271 (Pa. Commw. 2007) (noting that home rule municipalities have greater authority than their non-home rule counterparts).

The Pennsylvania legislature has created a private right of action under the Pennsylvania Human Relations Act, see 43 Cons. Pa. Stat. § 962(c), but there is no indication that the

-14-

legislature intended to allow any local counties to authorize a similar right of private action.

## 2. Creation of a Private Right of Action under Pennsylvania State Law

A leading Pennsylvania appellate case on the creation of a private right of action is Alfred M. Lutheran Distributors, Inc. v. AP Weilersbacher, Inc., 650 A.2d 83 (Pa. Super. 1994) in which the court relied on Cort v. Ash, 422 U.S. 66 (1975) for the following multi-factor test as follows:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose especial benefit the statute was enacted, that is, does the statute create a . . . right in favor of the plaintiff? Second, is there an indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

See, also, Estate of Witthoeft v. Kiskaddon, 733 A.2d 623, 626 (Pa. 1999) (denying private right of action against an ophthalmologist who allegedly failed to comply with statutory duty to notify Department of Transportation of his patient's poor eyesight), and Everett v. Harron, 110 A.2d 383 (Pa. 1995) (upholding a private right of civil action recovered damages based on the defendant's violation of a criminal statute). The Pennsylvania Supreme Court has emphasized that the overall most important factor is whether the legislature intended to create such a private cause of action.[5]

---

[5] Pennsylvania courts have maintained the multi-factor test adapted from Cort v. Ash, see Schappel v. Motorists Mut. Ins. Co., 934 A.2d 1184, 1189 (Pa. 2007), even though the United States Supreme Court has significantly modified that test.   In its most recent decision in this area, Alexander v. Sandoval, 532 U.S. 275 (2001), Justice Scalia wrote that the determination of Congressional intent requires finding (1) intent to create a personal right, and (2) intent to create a private remedy, reflecting a change from the test employed in Cort v. Ash.  Wisniewski v. Rodale, Inc., 510 F.3d 294, 299-310 (3d Cir. 2007) authoritatively reviews the conflicting decisions in this area of the law.  Although the Supreme Court itself has noted that state courts may have more latitude to develop private rights of action, federal courts are confined to analyzing Congressional intent.

### 3.    Conclusion Concerning the LCHRA

Based on the above analysis, I conclude that a non-home rule county, such as Lancaster County, does not have the authority to create a private right of action, and there is no evidence that the Pennsylvania legislature has otherwise authorized Lancaster County to create such a private right of action.

In support of this analysis, courts outside of Pennsylvania generally have found that counties exceeded their authority by attempting to create a private right of action, even where such counties were home rule.  See Quela v. Payco-General Am. Credits, Inc., 84 F.Supp.2d 956 (N.D. Ill. 2000) (striking down a county ordinance that created a private right of action for sexual harassment on the grounds that it exceeded the county's home rule authority under the state constitution and impermissibly burdened the functioning of the state judiciary); McCrory Corp. v. Fowler, 570 A.2d 834 (Md. 1990), superseded by statute, Md. Code Ann., Art. 49B § 42, as recognized in, Edwards Sys. Tech. v. Corbin, 841 A.2d 845 (Md. 2004) (holding that the home rule county exceeded its authority by creating a private right to sue in its anti-employment discrimination ordinance because it was a "general law" not a "local law," it encroached on a state function, and it addressed a statewide problem); but see Sims v. Besaw's Café, 997 P.2d 201, 211 (Or. Ct. App. 2000) (en banc) (upholding a private right of action under a Portland municipal anti-discrimination ordinance because a state circuit court had jurisdiction).  As described in a Harvard Law Review article:

> [W]hile localities may establish commissions to fashion
> administrative remedies for race discrimination, it is not at all clear
> that they have home rule power to follow the lead of the state and
> federal governments and create judicially enforceable private
> causes of action. Because such remedies threaten to adjust the

-16-

> rights of private persons vis-à-vis one another, courts have often
> concluded that they overstep the bounds of local power in a way
> that a wholly administrative remedial regime does not.

David Baron, <u>Reclaiming Home Rule</u>, 116 Harv. L. R. 2255, 2354 (2003).

In <u>McCrory</u>, the Maryland Supreme Court emphasized that while other courts had upheld a localities' authority to create a private right of action, those ordinances addressed matters of "a peculiarly local nature," whereas employment discrimination was a matter of statewide concern. <u>McCrory Corp.</u>, 570 A.2d at 840 (citing cases allowing private rights of action in local snow removal and towing ordinances). <u>McCrory</u> was subsequently abrogated by a specific state statute that created a private right of action for discrimination in violation of a county code. By contrast, Pennsylvania has no such state statute. In addition, the Pennsylvania Supreme Court has agreed with the Maryland Supreme Court in holding that a county may not legislate on a statewide matter. <u>Chester County</u>, 218 A.2d at 332.

Because Pennsylvania courts have not specifically upheld the creation of a private right of action by a county ordinance, because Lancaster County is not a home rule county, because Pennsylvania has provided a private right of action under the statewide PHRA, because Plaintiff has adequate remedies under these federal and state anti-discrimination statutes, and there is support from other federal courts against allowing counties to create private rights of actions, this Court will dismiss Plaintiff's LCHR claim.

**B.     Section 1981 Claim**

Section 1981 addresses race discrimination: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to make and enforce contracts . . . as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981(a). It is less clear whether

Section 1981 also protects against national origin discrimination.  In St. Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987), the Supreme Court held that national origin is to be interpreted broadly for the purposes of Section 1981 and may encompass ancestry or ethnic characteristics.  Id. ("Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.").  In concurrence, Justice Brennan stated that he "read the Court's opinion to state only that discrimination based on *birthplace alone* is insufficient to state a claim under § 1981."  Id. at 614 (Brennan, J., concurring) (emphasis in original).

The Third Circuit has not directly addressed whether Section 1981 provides a cause of action for discrimination based solely on national origin and district courts have gone both ways on claims based solely on national origin.  See Beaubrun v. Inter Cultural Family, 2006 WL 1997371, at *4 (E.D. Pa. 2006) (Stengel, J.) (rejecting a Section 1981 claim solely on the basis of national origin and citing cases that support this position); but see Abdulhay v. Bethlehem Med. Arts, L.P., 2004 WL 620127, at *5 n.35 (E.D. Pa. 2004) (Gardner, J.) ("Discrimination on the basis of national origin, ethnicity and ancestry clearly fall within the realm of [s]ection 1981.")

However, where a claim is based on ethnicity or ancestry, and not solely national origin, courts have allowed a Section 1981 claim.  Wallace v. Graphic Mgmt. Assoc., Inc., 2005 WL 527112, at *3 (E.D. Pa. 2005) ("Although § 1981 does not prohibit discrimination based on national origin, it does prohibit discrimination based on race, ethnicity, and ancestry.")

Plaintiff has sufficiently pled that his claim is based on his ethnicity and ancestry, and supported his claim with evidence, as reviewed above.  Thus, he is not asserting a pure national origin claim and therefore his Section 1981 claim can go forward.  Plaintiff's Amended

Complaint states that he is a "dark-skinned male born in Egypt. Plaintiff is of Middle Eastern descent." (Am. Compl. ¶ 17.) Plaintiff further alleges he was denied promotions "because of his national origin and ethnicity" (Id. ¶ 23.), that comments and jokes were made about his "heritage and ethnicity" (Id. ¶ 32.) and that he was treated "differently, adversely and disparately because of the plaintiff's nationality and ethnicity. . . ." (Id. ¶ 39.) All of these allegations are supported after discovery. Because, as noted below, Plaintiff's failure to promote and retaliation claims have been sufficiently supported in discovery, he can proceed to trial under Section 1981.[6]

C.    **Failure to Promote**

1.    **Statute of Limitations**

Defendant claims that Plaintiff's failure to promote claims are time barred. The applicable statutes of limitation are:

- Title VII: 300 days from the unlawful practice (since Plaintiff first filed with a local agency); therefore Plaintiff may rely on acts occurring on or after November 16, 2004 (300 days prior to LCHRC filing). See 42 U.S.C. §2000e-5(e)(1).

- PHRA: 180 days from the unlawful practice; therefore Plaintiff may rely on acts occurring on or after March 16, 2005 (180 days prior to LCHRC filing). See 43 P.S. § 959(h).

- § 1981: two years from filing of the complaint; therefore Plaintiff may rely on acts

_____

[6]Defendant argues that Plaintiff's retaliation claim under Section 1981 fails because the only protected activity that he engaged in was filing an initial charge of discrimination with the LCHRC in which he only claimed and pled "National Origin" discrimination. (See Defs.' Mot. Summ. J. Ex. 12.) However since Plaintiff's Amended Complaint specifically describes ethnic discrimination, the Court will allow the retaliation claim to go forward under § 1981 along with the discrimination claim.

occurring on or after November 7, 2004 (two years prior to Complaint).[7]

The specific positions to which Plaintiff was not promoted are the position filled by Hatfield on Jan. 13, 2003, the position filled by Lightner on Oct. 18, 2004, and an additional position was filled by an unnamed person in 2003 or 2004.[8]  Further, Anvil states that no

---

[7]The Pennsylvania two-year statute of limitations for personal injury applies to § 1981 claims that were cognizable prior to the 1991 amendments to § 1981.  See Goodman v. Lukens Steel Co., 482 U.S. 656, 660 (1987).  In 1990, Congress adopted a federal four-year catchall statute of limitations, applying to actions arising under federal statutes enacted after December 1, 1990.  28 U.S.C. § 1658.  In 1991, Congress amended § 1981 to define the term "make and enforce contracts" to include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Thereafter, § 1981 recognized previously unrecognized claims based on conduct that occurred after the formation of the employment contract.  See Patterson v. McLean Credit Union, 491 U.S. 164, 179 (1989).

In  Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383-384 (2004), the Supreme Court clarified that the four-year statute of limitations created by § 1658 applied to claims made actionable by the 1991 amendments to § 1981–in that case, hostile work environment, wrongful termination, and failure to transfer.  See also Verdin v. Weeks Marine Inc., 124 Fed.Appx. 92, 94, 96 n.3 (3d Cir. 2005) (assuming that four-year statute of limitations applied to a §1981 claim of hostile work environment, failure to promote, and retaliation); Sung Tran v. Delavau, LLC, 2008 WL 2051992, at *4 (E.D. Pa. 2008) (applying four-year statute of limitations to a claim of pay and promotion discrimination, retaliation, and hostile work environment).

 This Court will accept Defendant's argument that Plaintiff's failure to promote claim would have been cognizable under the prior version of § 1981, since Plaintiff sought supervisory positions no longer subject to the union collective bargaining agreement and involving a new employment contract.  See Patterson, 491 U.S. at 185-86 ("Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981."); but see Udujih v. City of Philadelphia, 513 F.Supp.2d 350, 354 (E.D. Pa. 2007) (applying a four-year statute of limitations to a failure to promote claim). However, Plaintiff did not address this issue in their brief, so the Court may allow further exploration of this issue at trial.

[8]The maintenance planner position vacated by Kossick in 2005 will not be considered, since it was never filled due to department restructuring.  Plaintiff can not establish a prima facie case of discrimination as to this position, since it fails the fourth prong: "after rejection, the position stayed open and the employer continued to seek applications from similarly qualified individuals."  See Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999) (noting that the major purpose of the prima facie case is to eliminate the most obvious, lawful reasons for defendant's action, including that the position sought by plaintiff was not filled for economic

production supervisors were hired or promoted between November 2004 and the date of

Plaintiff's initial charge on September 12, 2005.  Since no promotions occurred after October

2004, these specific claims are time-barred.

Plaintiff argues that his claims support a continuing violation theory and are therefore not

time-barred.  Where discriminatory conduct began prior to the filing period but Plaintiff can

demonstrate it was part of an ongoing pattern or practice of discrimination, the claim is not time-

barred.  West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995).  To establish a

continuing violations theory, Plaintiff must (1) demonstrate that at least one act occurred within

the filing period and (2) establish that the harassment is more than the occurrence of isolated or

sporadic acts of intentional discrimination.  Id. at 755.  "The relevant distinction is between the

occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern."  Id.

Plaintiff argues that because Anvil did not have a formal application process for

promotion and because he had informed Defendants of his desire to be promoted to supervisor in

2002, Defendants' continued passing-over of him for promotion constituted an on-going pattern

culminating in Moore and Millhouse's statements in August 2005 that he would no longer be

considered for a supervisory position.  This statement does fall within the filing period.  However

the Supreme Court and courts in this district have explicitly stated that promotions are isolated,

discrete events which rarely, if ever, support a continuing violations theory.  See Nat'l R.R.

Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002); O'Connor v. City of Newark, 440 F.3d

125, 127 (3d Cir. 2006); Ryan v. Gen. Mach. Prod., 277 F.Supp.2d 585, 592 (E.D. Pa. 2003)

(Baylson, J.)

_____

reasons).

-21-

Despite this precedent, the Court will allow Plaintiff's failure to promote claim to go forward in order for Plaintiff to develop his theory that his supervisors' statement that he would no longer be considered for a supervisor position constitutes a failure to promote.  Defendant has not adequately explained its reasoning for this statement, so a disputed issue of material fact exists as to the basis of this claim.  By allowing this claim to go forward, the Court is not making a ruling as to what evidence may or may not be admissible at trial, or what decision the Court may make on this issue with a full record if there is a finding for Plaintiff.

### 2.   Failure to Exhaust Administrative Remedies

Defendants argue that Plaintiff's initial LCHRC charge identified two specific positions for which he was turned down: production supervisor and the 2005 maintenance planner position.[9]  Therefore, Defendants assert that Plaintiff failed to exhaust his administrative remedies as to the position filled by Hatfield and either the production supervisor position filled by Lightner or the unnamed individual.

The parameters of a civil action in District Court are defined by the scope of the administrative investigation "which can reasonably be expected to grow out of the charge of discrimination."  Anjelino v. N.Y. Times Co., 200 F.3d 73, 94 (3d Cir. 1999) (citations omitted); see also Sun Trang v. Delavau, LLC, 2008 WL 2051992, at *4 (E.D. Pa. 2008) (applying the Anjelino standard to determine whether the administrative investigator would have reasonably been led to investigate the plaintiff's claims based on his administrative charges).

_____

[9]Plaintiff's initial LCHRC charge also identifies a maintenance supervisor position he applied for in 2001, the promotion of Paul Lauderschlager in 2002 or 2003, and a union grievance he filed based on lack of promotion.  (Defs.' Mot. Summ J. Ex. 12 ¶¶ 4, 5, 7.)  However these positions are time-barred and not adequately developed in the record.

Although Plaintiff's administrative charge does not identify all positions to which he now claims he was not promoted, the LCHRC investigation encompassed these additional positions (See Pl.'s Resp. Defs.' Mot. Ex. Q at 2-3, Tshudy LCHRC Test. (identifying the positions filled by Hatfield and Widner [Lightner]); Id. Ex. FF, LCHRC Internal Letter of Probable Cause (identifying Maintenance Supervisor, Production Supervisor, and Maintenance Planner as positions to which Plaintiff applied and identifying Pam Weidner [sic]).[10]  Additionally, Plaintiff claims that he was denied promotion generally and does not seek to confine his argument to specific identified positions.  Therefore, this Court does not find that Plaintiff failed to exhaust administrative remedies.

### 3.    **Evidentiary Preclusion**

Defendant argues that because Plaintiff failed to identify two of the positions to which he claims he was denied promotion in his answers to interrogatories, and has failed to supplement these answers subsequently, claims related to these positions should be dismissed under Federal Rule of Civil Procedure 37(c)(1).

Because this Court is allowing Plaintiff's failure to promote claim go forward, it is not necessary to rule on the admissibility of specific evidence at this time.  Defendants may continue this argument pre-trial or at trial.

### 4.    **Disputed Issues Regarding Pretext**

Barring the procedural arguments above, Defendant argues that Plaintiff's failure to

---

[10]The Court does not now rule on the admissibility of this document at trial.  If Plaintiff is able to show that this document was authored or prepared, after investigation, by someone with supervisory or managerial authority within the LCHRC, then it may be admissible.  Plaintiff shall provide legal authority if he wishes to admit this document at trial.

promote claim fails as a matter of law under the McDonnell Douglas burden-shifting structure

that applies to such claims.[11]   This Court will assume that Plaintiff has met his initial burden of

establishing a prima facie case of discrimination.[12]   Defendants have articulated a legitimate,

non-discriminatory reason for failing to promote Plaintiff, namely that other candidates were

better qualified.   Plaintiff argues that this reason was pretextual.   Because disputed issues of

material fact exist regarding pretext, this Court declines to grant Defendants' summary judgment

motion as to this claim.

A plaintiff can show pretext by submitting evidence from which a factfinder could

reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that

discrimination was more likely than not a motivating or determinative cause of the adverse

employment action.   Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).   Plaintiff initially

argues that the promoted employees Hatfield and Lightner were less qualified than Plaintiff and

other promoted employees were less educated than Plaintiff.   Although it is true that Plaintiff has

a degree in engineering, this does not mean that he was the most qualified candidate for specific

positions at Anvil.   Both Hatfield and Lightner possessed years of experience well-suited for the

positions to which they were hired and promoted, Hatfield had taken a number of specialized

professional training courses, Lightner had worked in the production department prior to being

---

[11]The Title VII McDonnell Douglas burden-shifting analysis applies to claims under the
PHRA and Section 1981.   See Tomasso v. Boeing Co., 445 F.3d 702, 704 (3d Cir. 2006)
(PHRA); Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 385 (3d Cir. 1999) (§ 1981).

[12]To prove a prima facie case for a failure to promote claim plaintiff must show that he:
(1) belongs to a protected category; (2) applied for and was qualified for a job in an available
position; (3) was rejected; and (4) after rejection, the position stayed open and the employer
continued to seek applications from similarly qualified individuals.   Bray v. Marriott Hotels, 110
F.3d 986, 990 (3d Cir. 1997).

promoted to department supervisor (unlike Plaintiff), and Lightner (like Plaintiff) received positive evaluations prior to her promotion.[13]  Further, Plaintiff did not have any recent supervisory experience.  Plaintiff can not rely on his own allegations that he was best qualified for the positions as evidence of pretext.  See Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991), overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993) ("The fact that an employee disagrees with an employer's evaluation of him does not prove pretext."); Williams-McCoy v. Starz Encore Group 2004 WL 356198, at *12 n.30 (E.D. Pa. 2004) ("[A]n employer is free to make subjective business decisions so long as they are not discriminatory.")

Plaintiff also argues that Tshudy's testimony to the LCHRC and the LCHRC's letter finding probable cause of discrimination prove pretext.  As noted above, Tshudy stated to the Lancaster County investigator during his interview that he believed Plaintiff was treated differently than other employees because of the color of his skin.  However, his later Affidavit presents contradictory testimony.  This dispute in the record requires a trial to resolve.

In addition, the un-signed, internal LCHRC letter stated probable cause of discrimination; however this letter was never issued to the parties.  At this stage, this Court does not rule on the admissibility of this evidence at trial.  See Rizzo v. PPL Service Corp., 2005 WL 913091, at *11(E.D. Pa. 2005) (citing Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1100 (3d Cir. 1995)) (stating that even where a court possesses an official agency determination of discrimination, the admissibility of such determinations is up to the trial court).

---

[13]Evaluations received by Hatfield after he was hired for the supervisor position are irrelevant because this evaluates Anvil's hiring decision with the benefit of hindsight.

D.      **Retaliation**

To show a prima facie claim of retaliatory discharge, Plaintiff must show (1) that he engaged in a protected activity; (2) that he was discharged subsequent to or contemporaneously with such activity; and (3) that a casual link exists between the protected activity and the discharge.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996).  Plaintiff argues that he was fired because he filed his initial discrimination charge with the LCHRC, which constitutes a protected activity.  However, Defendants argue that Plaintiff has failed to establish the necessary casual link between the filing of this charge and his termination.

Plaintiff relies on the temporal proximity between Defendants learning of Plaintiff's LCHRC charge and his subsequent firing.  Plaintiff alleges that Layman actually learned of the charge on the day of Plaintiff's suspension.  However, the record does not prove this assertion, and the parties are unable to show the exact day that Defendants learned of the charge after the LCHRC mailed notice on October 27, 2005.  However, Defendants admit that they were aware of the charge prior to Plaintiff's termination.

Temporal proximity by itself is generally insufficient to establish a causal connection for a prima facie claim of retaliation.  See Weston v. Pennsylvania, 251 F.3d 420 (3d Cir. 2001) (finding that with one exception, the Third Circuit has never found timing alone to be sufficient); but see Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (finding a prima facie case of retaliation based on plaintiff's discharge two days after employer's notice of his EEOC claim).  Additional factors the Third Circuit has considered to evaluate a causal link are employer's "pattern of antagonism" or retaliatory animus, an employer's inconsistent reasons for the employment action, inconsistencies in the defendant's testimony, the defendant's conduct toward

others, and the record as a whole.  See Farrell, 206 F.3d at 280-81.

Because there are disputed issues as to the exact timing of Defendants' receipt of notice of the LCHRC claim and because there are additional inconsistencies in the record related to Defendants' conduct towards Plaintiff, this Court will find that Plaintiff has established a prima facie claim of retaliation.  At the very least, the less than two weeks that passed between Defendants' notice of the discrimination charge and Plaintiff's termination appears suggestive.

Defendant argues that it had a legitimate, non-discriminatory reason for terminating Plaintiff based on Plaintiff's insubordination in refusing to work on Machine No. 72 and his exhibited inappropriate behavior towards his supervisors in several meetings.  Plaintiff claims that a disputed issue of fact exists as to whether this reason is pretextual.  Specifically, Layman first stated that Plaintiff told him he "would not" fix the machine and then agreed that Plaintiff said he "could not" fix the machine.  In addition, Plaintiff has shown that Machine No. 72 required extensive repairs over several days that Plaintiff could not have performed alone. Finally, the LCHRC internal letter found probable cause of retaliation.  However, Tshudy testified that he did not believe Plaintiff was fired in retaliation.[14]

Plaintiff has shown sufficient disputed material facts to go forward on his retaliation claim based on the disputed temporal proximity between Defendants awareness of Plaintiff's LCHRC charge and his termination, Layman's inconsistent statements as to why Plaintiff stated he refused to work on Machine No. 72, and disputed facts over whether sufficient grounds existed on which to terminate Plaintiff.

---

[14]"So the day in question [day of Plaintiff's suspension] I can honestly say that I don't believe that Lehman [sic] did anything wrong."  (Pl.'s Resp. Defs.' Mot. Ex. Q at 6, Tshudy LCHRC Test.)

E.    **Hostile Work Environment**

In order to state a hostile work environment claim, Plaintiff must show that (1) he suffered intentional discrimination because of his protected characteristic (2) the discrimination was severe or pervasive (3) the discrimination detrimentally affected the plaintiff (4) the discrimination would detrimentally affect a reasonable person in like circumstances and (5) the basis for employer liability is present.  Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006) (citations and footnotes omitted), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); see also Tucker v. Merck & Co., Inc., 131 Fed.Appx. 852, 858 (3d Cir. 2005) (applying the same standard to a § 1981 hostile work environment claim).

Defendant first argues that Plaintiff's claim is time-barred.  Plaintiff first raised his hostile work environment claim in  his amended complaint with the LCHRC on December 12, 2005.  In his deposition, Plaintiff stated that he believed Layman had not made jokes related to his ethnicity in the year prior to his firing; therefore, Layman had not made such jokes after November 10, 2004.  Although Plaintiff's hostile work environment claim against Layman would be time-barred under Title VII and the PHRA, it would not be time-barred under Section 1981.  See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383-384 (2004) (holding that a four-year statute of limitations applies to § 1981 claims that arise under the 1991 amendments, including hostile work environment).  Further, Plaintiff only admitted that Layman had not made jokes in the year prior to his firing; Defendant Anvil could be liable for a hostile environment perpetrated by other employees.  Therefore, this Court rejects Defendants' argument that the hostile work environment claim is time-barred.

Nevertheless, Plaintiff's fails to establish a prima facie claim of hostile work

environment.  "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Shramban v. Aetna, 115 Fed. Appx. 578, 580 (3d Cir. 2004).   Title VII will not support complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [ ] jokes, and occasional teasing."  Faragher v. City of Boca Raton, 524 U.S. 775 (1998).  See also Woodward v. DHB Die Casting, 255 Fed.Appx. 608 (3d Cir. 2007) (not finding a hostile work environment where African-American plaintiff's race was referred to as "you people," he was asked if he planned to execute a drug deal during a bathroom break, and graffiti of a burning cross and Klu Klux Klan sign remained posted on the bathroom wall for three months after plaintiff reported it to his employer); Lassiter v. Children's Hosp. of Philadelphia, 2008 WL 304891, at *7 (E.D. Pa. 2008) (not finding a hostile work environment where plaintiffs were not referred to with racial slurs, comments were subject to non-racial interpretation, comments were not physically threatening or humiliating, and comments did not interfere with plaintiffs' work performance); compare Cardenas v. Massey, 269 F.3d 251 (3d Cir. 2001) (finding a hostile work environment where employer referred to plaintiff as "the boy from the barrio" and "mojado," asked him during disagreements if he would pull a switchblade to resolve them, posted derogatory messages in plaintiff's cubicle, rounded evaluation scores of all other employees up while rounding plaintiff's down, intentionally gave plaintiff contradictory and impossible instructions, and referred to him as an "affirmative-action hire").

Plaintiff's only evidence of a hostile work environment are some "camel jokes" that he claims were made by Layman and other employees.  Joking by itself does not create severe and pervasive conduct to constitute a hostile work environment where the jokes were not threatening,

humiliating, nor interfered with Plaintiff's work.[15]

Further, Plaintiff appears to have participated in the jokes about his national origin.

(Defs.' Mot. Summ. J. Ex. 15 ¶ 11, Tshudy Aff. ("There were several occasions that I observed

Mr. Youssef joke with our co-workers about his national origin.  He would make and receive

jokes, and at no time did I ever hear him express offense or seem uncomfortable.")) Participating

in one's own harassment implies that Plaintiff was not detrimentally affected by the alleged

comments or that a reasonable person in his position would be so affected.  See Mobley v. City

of Atlantic City Police Dept., 2000 WL 363692, at *6 (D.N.J. 2000) (denying a hostile work

environment claim where the plaintiff admitted to participating in the sexual banter that she

complained of).   Therefore Plaintiff's prima facie claim fails on an additional ground.

Because the Court finds that Plaintiff's hostile work environment claim fails as a matter

of law, it will not address whether Defendants have a defense under the Faragher / Ellerth

doctrine.  See Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus., Inc.

v. Ellerth, 524 U.S. 742, 765 (1998).  The Court will grant summary judgment as to Plaintiff's

hostile work environment claim.

### F.   Defamation

Plaintiff claims that Layman falsely published to co-workers that he had been terminated

for insubordination.  The only evidence of defamation offered by Plaintiff beyond his own

deposition of what he heard from co-worker Emenheiser is a statement by Emenheiser that:

"After Nagi Youssef was no longer working at Anvil, Supervisor Larry Layman stated to me that

---

[15]For an invigorating discussion of humor in the workplace in various contexts, see Laura
E. Little, Regulating Funny: Humor and the Law, 94 Cornell L. Rev. (Forthcoming 2009).

Nagi was fired for refusing to do work." (Pl.'s Resp. Defs.' Mot. Ex. P at 2, Emenheiser Aff.) To establish defamation, Plaintiff must show: (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5) the understanding by the recipient of it as intended to be applied to the plaintiff, (6) special harm resulting to the plaintiff from its publication, and (7) abuse of a conditionally privileged occasion. 42 Pa.C.S.A. § 8343. A communication can be defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for proper conduct of his business, trade or profession. Maier v. Maretti, 671 A.2d 701, 704 (Pa. Super. 1995).

Defendants claim that Plaintiff has not stated a prima facie claim of defamation because the alleged statement is not sufficiently injurious to be defamatory and because it was a statement of opinion, which can not be defamatory. See Goralski v. Pizzimenti, 540 A.2d 595 (1988) (statement that appellant was terminated due to misconduct was not defamatory); Smith v. Sch. Dist. of Philadelphia, 112 F.Supp.2d 417, 429 (E.D. Pa. 2000) ("Under Pennsylvania law, only statements of fact can afford a basis for a defamation action; expressions of opinion cannot."). Plaintiff counters that Layman published a deliberate falsehood about Plaintiff's reason for termination when the real reason was that Plaintiff was unable to fix the machine.

Because an issue of disputed fact exists as to Plaintiff's reason for termination, this Court will allow Plaintiff's defamation claim to go forward.[16] Defendants' objections may have merit

---

[16]Just prior to filing this Memorandum, the Court received a Supplemental Brief including portions of a deposition transcript for Mr. Emenheiser, which appears to contradict his affidavit. The Court will allow argument concerning possible reconsideration of this ruling at a hearing to take place prior to trial.

and Defendants may have defenses to the defamation claim, but at this stage it is most practical to allow the defamation claim to proceed with the discrimination claims.  See Corabi v. Curtis Publ'g Co., 273 A.2d 899 (1971) (stating that where a statement could be defamatory, it is up to the jury to determine).

**V.      Conclusion**

For the reasons stated above, the Court grants summary judgment as to Plaintiff's hostile work environment and all claims under the LCHRA.  The Court denies summary judgment as to Plaintiff's failure to promote and retaliation claims under Title VII, Section 1981, and the PHRA and Plaintiff's defamation claim.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

NAGI YOUSSEF                               :          CIVIL ACTION
                                           :
                    v.                     :
                                           :
ANVIL INTERNATIONAL, et al.                :          NO. 06-4926

**<u>ORDER</u>**

AND NOW, this    22nd    day of January, 2009, upon careful review of the motion and

briefings, it is hereby ORDERED that Defendants Motion for Summary Judgment (Doc. No. 54)

is GRANTED in part and DENIED in part.

BY THE COURT:

s/Michael M. Baylson

_____

Michael M. Baylson, U.S.D.J.

O:\CIVIL\06-4926 Youssef v. Anvil\Youssef v. Anvil - Memo MSJ.wpd